**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bayo Ogundele, an individual, ) | No. CV-10-1013-PHX-GMS |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Girl Scouts - Arizona Cactus Pine Council, ) Inc., an Arizona non-profit corporation; ) Carol Ackerson, officially and in her ) individual capacity and John Doe ) Ackerson, wife and husband; Tamara ) Woodbury, officially and in her individual ) capacity and John Doe Woodbury, wife ) and husband; Matt Thesing, officially and ) in his individual capacity and Melissa ) Thesing, husband and wife; Maria ) Carpenter Ort, officially and in her ) individual capacity and John Doe Ort, wife ) and husband, ) | |
| Defendants. ) | |

Pending before the Court is a Motion to Dismiss all counts, and in the alternative, a Motion to Strike (Doc. 18) filed by Defendants Girl Scouts Arizona Cactus-Pine Council, Inc. ("Council"), Carol Ackerson, Tamara Woodbury, Matt Thesing, Melissa Thesing, Maria Carpenter Ort, and Donald Ort (collectively referred to as "Individual Defendants"). For the reasons provided below, the Court grants in part and denies in part Defendants' Motion.

**BACKGROUND**

This case arises out of Plaintiff's termination in 2009 from the Defendant Council.

1  Plaintiff's Complaint alleges the following. (Doc. 1). The Council employed Ogundele
2  beginning in or about April 1992, first as the Controller, then as the Director of Finance, and
3  later as the Chief Financial Officer ("CFO") of the Council. As CFO, Ogundele was
4  responsible for, among other things, presenting proposed Council budgets to the Finance
5  Committee and addressing any of the Committee's questions. (Doc. 1, 18). During one
6  Committee meeting held on November 4, 2008, Treasurer Mike Hoffman and other members
7  of the Committee raised concerns about how certain funds had been allocated and spent in
8  relation to the Council's proposed leadership programs for 2009. (Doc. 1). Plaintiff asserts
9  that, although Defendant Ackerson was responsible for addressing any questions regarding
10 the programs and non-financial information related to proposed budgets, she was unable to
11 address the Committee's questions to the Committee members' satisfaction. As a result, the
12 Committee determined that a report on the effectiveness of the leadership programs should
13 be presented to the Council's Board of Directors.

14 Plaintiff asserts that, as of November 2008, he had not received any negative feedback
15 regarding his performance as CFO. However, around the time of the Committee meeting, he
16 was informed by several Council employees that Defendant Ackerson "was making certain
17 false accusations regarding [his] performance, character and integrity." (*Id.*). In December
18 2008, Plaintiff met with his supervisor, Woodbury, who had just returned from a sabbatical.
19 He expressed concern that resources were being wasted on certain programs, that programs
20 were not being planned or operated effectively, that Ackerson was unable to sufficiently
21 address the Committee's questions regarding these programs, and that Ackerson was making
22 false accusations about Plaintiff. According to Plaintiff, his supervisor, Woodbury, failed to
23 initiate any investigation regarding his concerns.

24 On March 3, 2009, the Council held an Executive Services Response Team ("ESRT")
25 meeting, during which Ackerson and Woodbury "initiated a series of open, general and
26 unsubstantiated attacks on [Ogundele's] performance, character and integrity." (*Id.*). Plaintiff
27 had received no prior warnings or poor performance evaluations. A few weeks later,
28 Woodbury addressed additional "unsubstantiated complaints" and told Ogundele to apologize

to Ackerson for making certain complaints about her, which he had previously communicated to Woodbury. (*Id.*). Plaintiff was also instructed to meet with certain Council employees about the situation. Although Plaintiff asserts that he met with every individual on Woodbury's list, Woodbury complained at the end of March 2009 that Plaintiff had failed to meet with certain of those individuals.

In mid-April 2009, Ogundele attended an ESRT Retreat, at which Woodbury, Ackerson and Matt Thesing "initiated a series of additional open, general and unsubstantiated attacks on [Plaintiff's] performance, character and integrity separate and apart from those raised" at the March 2009 meeting. (*Id.*). No other employee was reviewed during the retreat, and no evaluation of Plaintiff's performance had been conducted as required by the Council's Employment Policy Handbook. At the retreat, Ogundele was asked to prepare a financial plan to be presented at the next ESRT meeting. The meeting was held at the end of April, and Ogundele's plan was accepted and the ESRT confirmed Plaintiff's proposal to present an update regarding such plan at each subsequent ESRT meeting.

Following the meeting, Plaintiff attempted to seek out ESRT members for feedback on his plan, however, only a few actually provided feedback. At the May 2009 meeting, Plaintiff presented an update on the plan, including his unsuccessful efforts to obtain feedback from ESRT members. About a week later, Ackerson and Thesing asked Ogundele to attend a meeting, during which he was informed that he had been terminated. Ogundele asserts that, contrary to requirements set forth in the employment handbook, neither Woodbury nor Catherine Ahmed, the Council's Employee Services Manager, participated in the decision to terminate him or attended the May 15, 2009 termination meeting. Plaintiff contends that his termination is in retaliation for reporting certain concerns regarding Ackerson, mismanagement and misappropriation of funds, false accounting and financial reporting, and violations of the Company's Business Ethics Policy, among other issues.

Plaintiff filed his Complaint, raising eight claims and requesting damages. Defendants filed a Motion to Dismiss all claims, and in the alternative, a Motion to Strike several of Plaintiff's exhibits involving offers of compromise and other documents protected by Rule

408 of the Federal Rules of Evidence.

## DISCUSSION

**1. Motion to Dismiss**

**i. Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**ii. 42 U.S.C. § 1981**

Plaintiff's Complaint asserts a § 1981 claim based on Defendants' violation of Plaintiff's right to free expression on a matter of public concern. (Doc. 1). Additionally, Ogundele alleges that Defendants deprived him of "the equal rights, and specifically the

1   same rights as those enjoyed by similarly situated fellow Council employees, to make and
2   enforce contracts and to give evidence." (*Id.*). Section 1981 provides that all persons

> shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

A plaintiff stating a claim under § 1981 "must show intentional discrimination on account of race." *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989); *see also White v. Wash. Pub. Power Supply Sys.*, 692 F.2d 1286, 1290 (9th Cir. 1982) ("It is well settled that section 1981 only redresses discrimination based on plaintiff's race."). As Plaintiff essentially concedes, the Complaint does not actually allege that any deprivation of his rights was a result of discrimination based on race. (Doc. 25). Plaintiff's Charge of Discrimination, submitted to the Equal Employment Opportunity Commission, states that he was terminated without any complaints or reports about his performance, that his claims regarding Defendant Ackerson were not addressed, and that he believes that this was a result of discrimination based on race and national origin. (Doc. 2, Ex. 4). Thus, it appears from Plaintiff's Charge that he may be able to allege sufficient facts with regard to this count.[1] At the same time, the Court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Accordingly, dismissal is with leave to amend.[2]

### iii. A.R.S. § 23-1501

Plaintiff's Complaint asserts a claim under the Arizona Employment Protection Act, A.R.S. § 23-1501(3)(c)(ii), which states that a plaintiff has a claim against an employer for retaliatory discharge provided that the employee can show that he disclosed "in a reasonable

---

[1] Moreover, Defendants have stipulated to Plaintiff's request to amend claims one and two. (Doc. 28).

[2] Plaintiff has also agreed to eliminate from any amended complaint that he may file claim two, which raised a separate cause of action under 42 U.S.C. § 1981a. Plaintiff concedes that the remedies he seeks pursuant to § 1981a should be claimed as remedies to his §1981 claim and any Title VII claim of employment discrimination, rather than as an independent cause of action. (Doc. 25).

1 manner" "information or a reasonable belief that the employer, or an employee of the
2 employer, has violated, is violating or will violate the Constitution of Arizona or the statutes
3 of this state." Plaintiff must also show that the disclosure was made to "the employer or a
4 representative of the employer who the employee reasonably believes is in a managerial or
5 supervisory position and has the authority to investigate the information provided by the
6 employee and to take action to prevent further violations . . . ." *Id.* Plaintiff contends that the
7 Council terminated him in retaliation for disclosing his reasonable belief that Defendant
8 Ackerson and possibly other Council employees had violated, are violating or will violate
9 Arizona law. (Doc. 1). Specifically, Plaintiff expressed concern to Woodbury that Ackerson
10 or other Council employees were mismanaging and misappropriating Council funds,
11 including those received through public donation, engaging in false accounting and financial
12 reporting, and possibly violating Arizona legal accounting and non-profit reporting
13 requirements. (Doc. 1, ¶ 27). The Complaint further states that Plaintiff reasonably believed
14 that Woodbury was acting in a supervisory and/or managerial position with the authority to
15 investigate the information that he disclosed.

16 Defendants contend in their motion that Plaintiff's retaliation claim should be
17 dismissed either because he has not specifically identified which state laws have allegedly
18 been violated, or alternatively, because he has not stated a claim against the Individual
19 Defendants. Although Plaintiff has not specified exactly which Arizona statutes he believes
20 Ackerson, and possibly other colleagues, violated, his Complaint states that he reasonably
21 believed that Ackerson was violating state laws and that he shared his "reasonable belief"
22 with Woodbury. Taking Plaintiff's allegations and assertions of fact as true, Plaintiff's
23 Complaint presents sufficient facts to state a plausible claim under A.R.S. § 23-1501(3)(c)(ii)
24 against the Council. *See Lombardi v. Copper Canyon Acad., LLC*, 2010 WL 3775408, at *6
25 n.7 (D. Ariz. Sept. 21, 2010) (noting that an AEPA claim should not be dismissed for
26 "failure to state which source statute was violated under the AEPA").

27 Plaintiff asserts in his Response that he has adequately stated a wrongful termination
28 claim against the Individual Defendants. Plaintiff is correct that under certain circumstances

1  an individual, such as a supervisor, may be personally liable under A.R.S. § 23-
2  1501(3)(c)(ii). *See Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, 293–94, 173 P.3d 453,
3  457–58 (App. 2007). In *Higgins*, the Arizona Court of Appeals concluded that an individual
4  "could be held liable in a case where the company has invested its supervisor with day-to-day
5  control over the company, including the right to fire, and the supervisor has in fact exercised
6  such control to harm another." *Id.* at 294, 173 P.3d at 458. Thus, the court seems to suggest
7  that those individuals who have the authority to fire an employee and who do so in a manner
8  that constitutes wrongful termination may be held personally liable for such actions. *See also*
9  *McBurnie v. City of Prescott*, 2010 WL 5344927, at *4 (D. Ariz. Dec. 22, 2010).

10  Defendants assert that Plaintiff's Complaint fails to allege that Ackerson, Thesing or
11  Maria Carpenter Ort were acting in some supervisory capacity, as required under *Higgins*.
12  (Doc. 18). Although Plaintiff's Complaint suggests that he was not in Ackerson's or
13  Thesing's chain of command, the Complaint also alleges that it was in fact Ackerson and
14  Thesing who terminated Plaintiff's employment on May 15, 2009. Taking these facts in light
15  most favorable to Ogundele, it appears that Ackerson and Thesing had the authority to
16  terminate Ogundele's employment, and that his termination was allegedly in retaliation for
17  his disclosure of violations of certain accounting and reporting laws. The fact that Ogundele
18  had raised concerns about Ackerson, and that she was directly involved in his termination
19  also supports his claim of wrongful termination. As for Maria Carpenter Ort, Plaintiff only
20  mentions her specifically once in the fact section of his Complaint and not at all in his
21  discussion of his wrongful termination claim.

22  Defendants assert that the claim against Woodbury should be dismissed because
23  Plaintiff has conceded that Woodbury did not participate in the decision to terminate him.
24  (*Id.*). Although Plaintiff's Complaint alleges that Woodbury maintained, to some extent, day-
25  to-day control over the company and would have had the authority to fire him, Ogundele
26  concedes in his Complaint that Woodbury did not personally participate in his termination
27  meeting in mid-May or generally in the decision to terminate his employment. (Doc. 1). To
28  hold Woodbury personally liable as a supervisor, she would have had to actually use her

- 7 -

1  authority to harm Plaintiff. Plaintiff's Complaint explicitly states that Woodbury did not do
2  so, and therefore, Plaintiff has not asserted a claim against Woodbury as a supervisor.
3  Accordingly, this claim will be dismissed as to Ort and Woodbury.

### iv. Breach of Contract

Plaintiff asserts in his Complaint that at all material times the Council's Employment Policy Handbook was in effect and constituted part of the terms and conditions of his employment. (Doc. 1). Plaintiff further contends that Defendants breached the employment agreement between the parties by violating requirements set forth in the Handbook, particularly with regard to conducting investigations, retaliation against employees for reporting a violation of the Council's Business Ethics Policy, and evaluating employee performance. Defendants move to dismiss Plaintiff's breach of contract claim because "his employment was at-will and did not create a contractual relationship" and because he has failed to allege that he had a contractual relationship with any of the Individual Defendants. (Doc. 18). Defendants quote a provision of the Handbook, which states that "[n]othing contained in this handbook should be perceived as stating or implying a contract of employment". (Doc. 28).

Under Arizona law, a plaintiff asserting a claim for breach of contract must demonstrate the existence of a contract between plaintiff and defendant, breach of that contract by defendant, and resulting damage to plaintiff. *Frank Lloyd Wright Found. v. Kroeter*, 697 F.Supp.2d 1118, 1125 (D. Ariz. 2010). The Arizona Supreme Court has stated that a provision of a handbook creates contractual promises "only if it discloses 'a promissory intent or [is] one that the employee could reasonably conclude constituted a commitment by the employer. If the statement is merely a description of the employer's present policies . . . it is neither a promise nor a statement that could reasonably be relied upon as a commitment.'" *Demasse v. ITT Corp.*, 194 Ariz. 500, 505, 984 P.2d 1138, 1143 (1999) (quoting *Soderlun v. Pub. Serv. Co.*, 944 P.2d 616, 620 (Colo. App. 1997)). Although, as Plaintiff notes, in some cases the issue of whether a provision in an employee handbook becomes part of an employment contract is a question of fact, that is not so where

- 8 -

1 the employer has issued "a personnel manual that clearly and conspicuously tells their
2 employees that the manual is not part of the employment contract and that their jobs are
3 terminable at the will of the employer with or without reason." *Leikvold v. Valley View Cmty.*
4 *Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984), *superceded on other grounds by* A.R.S.
5 § 23-1501, et seq; *see also Roberson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 291, 44 P.3d
6 164, 169 (App. 2002) ("Disclaimers in personnel manuals that clearly and conspicuously tell
7 employees that the manual is not part of the employment contract and that their jobs are
8 terminable at will 'instill no reasonable expectations of job security and do not give
9 employees any reason to rely on representations in the manual.'" (quoting *Leikvold*, 141
10 Ariz. at 548, 688 P.2d at 174)).

11 Unlike the facts described in some of the cases cited by Plaintiff, *see, e.g., Loffa v.*
12 *Intel Corp.*, 153 Ariz. 539, 544, 738 P.2d 1146, 1151 (App. 1987), in which company
13 handbooks merely state that policies described therein "should not be interpreted to be in
14 conflict with or to eliminate or modify" the at-will status of the employees, the handbook at
15 issue here goes further than that. (Doc. 2, Ex. 1). As noted above, the Handbook explicitly
16 states that it cannot be interpreted as stating or implying an employment contract. Because
17 the Council Handbook clearly states that its terms do not create an employment contract,
18 Plaintiff has not alleged facts that, even if true, satisfy the first element of a breach of
19 contract claim–showing the existence of a contract. *See Almada v. Allstate Ins. Co.*, 285 F.3d
20 798 (9th Cir. 2002) (no breach of contract where employee manual contained disclaimer,
21 stating that the manual was "'not a statement of contractual rights' and that employment at
22 Allstate was 'terminable at the will of either'" party); *Duncan v. St. Joseph's Hosp. & Med.*
23 *Ctr.*, 183 Ariz. 349, 356, 903 P.2d 1107, 1114 (App. 1995); *see also Roberson*, 202 Ariz. at
24 294, 44 P.3d at 172. Accordingly, Plaintiff's breach of contract claim is dismissed.

25 **v. Breach of Implied Contract**

26 Defendants assert that Plaintiff's breach of implied contract claim should be dismissed
27 for essentially the same reasons as the breach of contract claim—that the express language
28 of the Employee Handbook precludes an implied contract and Plaintiff's failure to allege an

implied contract between himself and the Individual Defendants. (Doc. 18).[3] Plaintiff asserts that an implied contract exists based on assurances made by the Council's Board of Directors and/or Executive Director that no Council positions would be eliminated for the Council's 2009-10 Fiscal Year. (Doc. 1). He contends that these announcements were further "verified, reinforced and ratified" by subsequent public statements made by Woodbury and Ackerson. Plaintiff asserts that these statements constituted an offer that he accepted by continuing to work for the Council and engaging in efforts to accommodate their concerns. (*Id.*). The Council then breached this implied contract by eliminating Ogundele's position during the 2009-10 Fiscal Year. (*Id.*).

"An implied-in-fact contract term is one that is inferred from the statements or conduct of the parties and becomes as enforceable as an express term." *Roberson*, 202 Ariz. at 291, 44 P.3d at 169 (citing *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 381, 710 P.2d 1025, 1036 (1985), *superseded in other respects by* A.R.S. § 23-1501). Promises of job security may constitute an implied contract when the statement or assurance is one "'that the employee could reasonably conclude constitute a commitment by the employer.'" *Id.* (quoting *Demasse*, 194 Ariz. at 505, 984 P.2d at 1143).

As the Court noted above, the Handbook makes clear that nothing therein should be construed as creating a contract. The Handbook also includes at-will employment language. Even so, the "inclusion of disclaiming language in a personnel manual . . . may not always insulate an employer from liability. For example, contrary oral or written assurances made . . . during employment may constitute an implied contract, altering the at-will relationship." *Id.*; *see also Loffa*, 153 Ariz. at 543, 738 P.2d at 1150 (noting that the jury may consider the employer's course of conduct and oral representations to determine whether the employment relationship has been modified). The disclaiming language in the Handbook pertains solely

---

[3] Defendants in their Reply also argue that A.R.S. § 23-1501(2) precludes a breach of implied contract claim based on verbal promises or assurances. (Doc. 28). The Court need not consider arguments raised for the first time in a reply brief. *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

- 10 -

1 to statements made within the Handbook. The disclaimer does not apply to other verbal
2 statements or assurances made by the Council. *Cf. Roberson*, 202 Ariz. at 288, 44 P.3d at 166
3 (noting that the Wal-Mart employee handbook included a provision that "**nothing stated in**
4 **this handbook or by any member of management is intended to create any guarantees**
5 **of any certain disciplinary procedures**"). Because verbal assurances or promises may alter
6 an at-will employment relationship, Plaintiff has alleged sufficient facts with regard to its
7 beach of implied contract claim against the Council to survive Defendants' 12(b)(6) motion.

8 Plaintiff's Complaint explicitly states that the "offer and acceptance resulted in an
9 enforceable implied contract between the Council and Mr. Ogundele." (Doc. 1). Plaintiff in
10 his Response now attempts to assert claims for breach of implied contract against all
11 Individual Defendants as well. (Doc. 25). The Court need not address claims that are not
12 properly raised in the Complaint. *See Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050
13 n.5 (9th Cir. 1987) (Ninth Circuit could not consider a claim raised only in a response to the
14 defendant's motion for summary judgment, but never as a cause of action).

15 **vi. Negligence**

16 Plaintiff's Complaint asserts that Defendants owed Plaintiff a duty to act reasonably
17 toward him and breached that duty by violating certain requirements set forth in the
18 Handbook. (Doc. 1). Defendants contend that Plaintiff cannot bring a claim of negligence if
19 it is "solely based on a duty derived from a purported contractual relationship." (Doc. 18).
20 They assert that as an at-will employee, Plaintiff cannot use negligence to enforce rights not
21 granted in an employment contract. In the alternative, Defendants assert that any duty created
22 by the Handbook is a duty owed by the Council. Because the Handbook did not create any
23 duties or obligations owed by Individual Defendants, the claim should be dismissed as to
24 those defendants.

25 Whether a defendant owes a duty of care to a plaintiff is decided by the Court as a
26 matter of law. *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). Plaintiff does
27 not concede that he is an at-will employee, but nevertheless argues that if the Court considers
28 him an at-will employee, the public policy exception to the at-will rule would apply. (Doc.

25). The public policy exception provides that "even in an at-will employment situation, an employer has a duty to the employee to refrain from terminating his or her employment for bad cause." *Mack v. McDonnell Douglas Helicopter Co.*, 179 Ariz. 627, 629, 880 P.2d 1173, 1175 (App. 1994). A "bad cause" termination is one that violates constitutional, statutory or decisional law. *Id.* (citing *Wagenseller*, 147 Ariz. at 381, 710 P.2d at 1036). Plaintiff has alleged facts that, taken as true, may support a claim for retaliatory discharge.[4] Termination of an employee for disclosing concerns regarding possible violations of state law, including the misappropriation of donated funds, would likely be considered a violation of public policy. *See id.* at 630, 880 P.2d at 1176; *see also Wagenseller*, 147 Ariz. at 377, 710 P.2d at 1032 (noting that the leading case recognizing the public policy exception to the at-will doctrine was a case in which an employee had been terminated for "supplying information to police investigating alleged criminal violations by a co-employee"). Accordingly, Plaintiff has stated a negligence claim against his former employer, the Council. To the extent that Plaintiff's Complaint meets the 12(b)(6) standard for the retaliation claim as to the Individual Defendants, Plaintiff's negligence claim survives. Accordingly, Plaintiff's negligence claim against Ackerson and Thesing survives Defendants' Motion to Dismiss.

### vii. Defamation of Character

Under Arizona law, a plaintiff asserting a claim for defamation must show (1) that the defendant made a false statement; (2) that the statement was published or communicated to someone other than the plaintiff; and (3) that the statement tends to harm plaintiff's reputation. *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Id.* Plaintiff alleges that on several occasions Ackerson and Woodbury made "false accusations" and "initiated a series of open, general and unsubstantiated attacks on Mr.

---

[4] The Court notes that Plaintiff's negligence claim under the public policy exception is essentially identical to his retaliation claim pursuant to A.R.S. § 23-1501.

1  Ogundele's performance, character and integrity." (Doc. 1). He also asserts that on one
2  occasion Thesing participated in these attacks on his character and integrity. These attacks
3  were communicated to other members of the Council's ESRT. Ogundele also alleges that
4  following his termination, Woodbury and other high level Council employees responded to
5  inquiries about his departure from other Council employees by alluding to "integrity and trust
6  issues." (*Id.*). Defendants contend that Plaintiff has failed to state a claim because he has not
7  specified exactly what false statements were published by Defendants. (Doc. 18). Moreover,
8  they assert that the claim must be dismissed because the alleged statements would likely be
9  subject to a qualified privilege.

10  Plaintiff merely provides a recitation of the elements of a defamation claim. Beyond
11  identifying those who allegedly made defamatory statements, attacking his character and
12  integrity, Plaintiff's Complaint is filled with assertions that are consistent with liability, but
13  otherwise lack facial plausibility. Plaintiff's defamation claim will be dismissed with leave
14  to amend because Plaintiff may be able to allege sufficient facts with regard to this count. *See*
15  FED. R. CIV. P. 15(a)(2).

16  **viii. Quantum Meruit**

17  Count eight of Plaintiff's Complaint sets forth a claim for quantum meruit, which
18  Plaintiff concedes in his Response is actually a remedy rather than a separate cause of action.
19  (Doc. 25). Plaintiff also concedes that quantum meruit could be an equitable remedy for a
20  claim of unjust enrichment or promissory estoppel. (*Id.*). Because it is unclear which claim
21  Plaintiff is asserting in his Complaint, the Court will grant the Motion to Dismiss as to this
22  claim, with leave to amend.

23  **2. Motion to Strike**

24  Defendants move to strike exhibits attached to Plaintiff's Complaint related to the
25  parties' negotiations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and Local
26  Rule 7.2(m). (Doc. 18). Defendants contend that the inclusion of such documents violates
27  Federal Rule of Evidence 408 because they are evidence of "an offer to compromise or
28  conduct or statements made in compromise negotiations." (*Id.*). Plaintiff responds that the

- 13 -

exhibits have not been attached for one of the prohibited purposes listed in Rule 408, but fails to explain for what purpose those documents were included. (Doc. 25).

Rule 12(f) provides that a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Although motions to strike are generally disfavored, *see* 5A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1380 (2d ed. 1990), in this case the settlement documents are inadmissible under Rule 408, and are therefore immaterial. Accordingly, Defendants' Motion to Strike is granted to the extent that Exhibit 2 contains documents referring to settlement communications or negotiations.

## CONCLUSION

Defendants' Motion to Dismiss is granted as to Count 1 (§ 1981), Count 7 (Defamation of Character) and Count 8 (Quantum Meruit). Plaintiff's wrongful termination claim pursuant to A.R.S. § 23-1501 and negligence claim shall be dismissed as to Defendants Ort and Woodbury. Plaintiff shall have **30 days** from the date of this Order to file an amended complaint.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 18) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (Doc. 18) is **granted.** The Court strikes the following pages contained in Exhibit 2 of Document 2: 56–59; 77–78.

DATED this 10th day of May, 2011.

G. Murray Snow
United States District Judge

- 14 -